UNITED STATES of America

v.

Richard I. JOHNSON, Sr., Richard I. Johnson, Jr., Joseph Rosinski and Joan Chuba, Defendants.

No. 92–CR–39A.

United States District Court, W.D. New York.

May 26, 1995.

Patrick H. NeMoyer, U.S. Atty. (Martin J. Littlefield, Asst. U.S. Atty., of counsel), Buffalo, NY, for the Government.

Rodney O. Personius, Buffalo, NY, for defendant Johnson, Sr.

Robert L. Boreanaz, Buffalo, NY, for defendant Johnson, Jr.

Mark J. Mahoney, Buffalo, NY, for defendant Rosinski.

David G. Jay, Buffalo, NY, for defendant Chuba.

### ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on March 11, 1992. De-

fendants filed motions to dismiss Counts II, III and portions of Count I of the Indictment, and also to suppress evidence seized pursuant to three search warrants.

On August 9, 1994, Magistrate Judge Foschio filed a Report and Recommendation recommending denial of defendants' motions to dismiss Counts II and III and portions of Count I, and denial of defendants' motion to suppress evidence seized pursuant to three search warrants, or for a hearing to defendants' objections to the Magistrate Judge's recommendation that evidence seized pursuant to the three certain search warrants should not be suppressed due to overbreadth, the Court finds, in addition to the reasons cited by the Magistrate Judge, that, under the circumstances, the warrants were sufficiently particular so as not to be overbroad.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court denies defendants' motions to dismiss Counts II and II, and portions of Count I; and also denies defendants' motion to suppress evidence seized pursuant to three search warrants, or for a hearing to determine whether the warrant is sustainable under the good faith exception.

IT IS SO ORDERED.

Aug. 9, 1994.

### REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

#### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on March 11, 1992 for disposition of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and for report and recommendation pursuant to § 636(b)(1)(B). It is currently before the court on the Defendants' motion to dismiss Counts II, III and portions of Count I of the Indictment, and the motion to suppress evidence seized pursuant to three search warrants. The Defendants' motions for pretrial discovery, severance, to strike surplusage, for hearings directed at the search warrants and for inspection of the Grand Jury instruc-

tions are addressed in a separate Decision and Order.

## BACKGROUND and FACTS

The Defendants are charged, in a twenty-one count Indictment dated February 26, 1991, with violations of 18 U.S.C. §§ 1001 and 2, 42 U.S.C. § 6928(d), and 18 U.S.C. §§ 371, 2, 152, 1341 and 1623. Specifically, Richard I. Johnson, Sr., Richard I. Johnson, Jr. ("the Johnsons"), and Rosinski ("Rosinski") are charged in Count I with conspiracy to violate the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. §§ 6928(d)(2) and 6928(d)(3), to make false statements to a government agency, specifically the United States Environmental Protection Agency ("EPA") in violation of 18 U.S.C. § 1001, and to willfully defraud the United States. At all times relevant to this Indictment, the Johnsons are alleged to have controlled a business known as Envirotek Ltd. ("Envirotek"), with offices at 849 Delaware Avenue, Buffalo, New York, and a plant/facility at 4000 River Road, Tonawanda, New York. See Indictment, at 4. Envirotek was held out to be a facility authorized to conduct the treatment, storage and disposal ("TSD") of hazardous wastes, and was operating pursuant to "interim status," as it had not been granted final authorization for a permit by either New York State or the EPA. See Indictment, at 4. As an "interim status" facility, Envirotek was permitted to transport, store, and treat hazardous wastes through the proper operation of certain distillation "stills," but not to dispose of them on site. See Indictment, para. 8, at 5. It is also alleged that Envirotek continued to have an excessive number of drums of hazardous waste at its River Road facility, and had entered into a Consent Order with the New York State Department of Environmental Conservation ("DEC") to limit the number of drums at the site, and to cease all "gate receipts" of hazardous wastes until Envirotek made a substantial reduction of such drums on site. See Indictment, para. 11, at 6.

In furtherance of the conspiracy, it is alleged that the Defendants committed several overt acts, as follows: (1) During 1982 and 1983, with the knowledge of the Johnsons, drums of hazardous waste were placed in pits on property adjacent to the River Road facility and covered with fly ash. See Indictment, at 7. (2) During 1984 and 1985, with the knowledge of the Johnsons and Rosinski, employees of Envirotek dumped the contents of drums containing hazardous waste into drains and onto property adjacent to the river Road facility. See Indictment, at 8. (3) Between 1982 and 1988, with the knowledge of the Johnsons, hazardous wastes from Envirotek distillation operations were disposed of directly onto the ground outside the building which housed the stills.[1] See Indictment, at 8–9. (4) During 1985, with the knowledge of the Johnsons and Rosinski, hazardous waste was dumped in a warehouse annex at the River Road facility. See Indictment, at 9. (5) During February 1988 and July 1989, with the knowledge of Richard I. Johnson, Jr., hazardous wastes from In & Out Printing, Inc. and Motorola, Inc. were burned by an Envirotek employee. See Indictment, at 10. (6) During the spring of 1987, Rosinski illegally disposed of hazardous wastes by driving a tanker truck with its valve open on property immediately adjacent to the River Road facility. See Indictment, at 10. (7) Between 1982 and 1989, the Johnsons allowed the storage of more drums of hazardous waste at the River Road facility than approved by DEC regulators. See Indictment, at 10. (8) In March 1985 and on or about September 1, 1988, Richard I. Johnson, Sr. filed reports in response to a RCRA Facility Assessment ("RFA"), wherein he

---

1. The so-called "DCI still," acquired by Envirotek from a company named DCI, was designed to separate pure solvent from spent solvents, a listed hazardous waste under regulations promulgated by the EPA pursuant to RCRA, by the injection of steam into the spent solvents. Solvents and steam/water would then vaporize and condense, with the separated solvent being collected for reuse. The separated "waste water" or "overhead waste" was allegedly drained through a hose onto the ground. See Indictment, at 12–14. The so-called "Brighton still" was designed to apply "dry" heat in a vacuum to the contaminated solvents. The solvents would then vaporize, and be condensed and collected. It is alleged that wastes in the Brighton still occasionally became "superheated," causing severe foaming that would be emitted through the venting system and onto the ground outside the still. See Indictment, at 15–16.

stated there had been no releases of hazardous waste from or at the Envirotek facility. *See* Indictment, at 10. (9) On or about January 24, 1989, Richard I. Johnson, Jr. in response to questions posed by on-site RCRA inspectors, stated that there had been no release of hazardous waste from the Envirotek facility. *See* Indictment, at 11. (10) On June 16, 1988, Richard I. Johnson, Sr., in a RCRA permit application, attached a lease for the River Road facility and falsely certified that the facility was owned by 4000 River Road Ltd., and that a valid lease existed between 4000 River Road Ltd. and Envirotek. Indictment, at 11.

In Count II, the Johnsons are accused of the illegal disposal of hazardous waste from a still (the "DCI still") from approximately 1984 until 1988. In Count III, the Johnsons are accused of the illegal disposal of contaminated solvent mixtures from another still (the "Brighton still") from approximately 1982 until 1988.

In Count IV, the Johnsons are accused of making false statements to the DEC in an application for a permit for a Treatment, Storage and Disposal ("TSD") facility, a matter within the jurisdiction of the EPA. In Count V, Richard I. Johnson, Sr. is accused of making false statements to the EPA in that he represented, in a RFA, that there had been no release of hazardous wastes or hazardous waste constituents from Envirotek operations. In Count VI, Richard I. Johnson, Jr. is accused of making false oral statements to agents of the EPA. In Count VII, Richard I. Johnson, Jr. is accused of treating hazardous wastes, from In & Out Printing, Inc., without a permit. In Count VIII, Richard I. Johnson, Jr. is accused of making false statements for the purpose of compliance with EPA regulations with regard to the hazardous wastes from In & Out Printing, Inc.

In Count IX, Richard I. Johnson, Jr. is accused of scheming to defraud In & Out Printing, Inc. by use of the United States Postal Service. In Count X, Richard I. Johnson, Sr. is accused of the unauthorized treatment of hazardous wastes from Motorola, Inc. In Count XI, Richard I. Johnson, Jr. is accused of making false statements for the

purpose of compliance with EPA regulations with regard to the hazardous wastes from Motorola, Inc. In Count XII, Richard I. Johnson, Jr. is accused of mail fraud with regard to the handling of hazardous wastes from Motorola, Inc. In Counts XIII, XIV and XV, Richard I. Johnson, Jr. is accused of making false statements for the purpose of compliance with EPA regulations.

In Count XVI, the Johnsons and Defendant Chuba are accused of conspiracy to make false oaths in a bankruptcy proceeding, to commit bankruptcy fraud, and to make false declarations before a Grand Jury. In Count XVII, these Defendants are accused of fraudulently concealing property belonging to the bankrupt estate of Envirotek Ltd. In Count XVIII, the Johnsons are accused of withholding information from the bankruptcy trustee, including the total sales generated by Envirotek. In Count XIX, Richard I. Johnson, Jr. is accused of testifying falsely before a United States Grand Jury. In Counts XX and XXI, Richard I. Johnson, Sr. is accused of making a false oath in a bankruptcy proceeding on two separate occasions.

On March 12, 1992, Chuba filed a motion seeking severance. In an order filed March 31, 1992, this court adjourned the motion pending the completion of discovery. On March 25, 1992, Richard I. Johnson, Sr. and Rosinski filed discovery requests and a request for a bill of particulars. The Government filed its response to the discovery requests and a bill of particulars on April 2, 1992. On October 23, 1992, Rosinski filed a motion seeking severance. On May 25, 1993, the Government filed a supplemental bill of particulars, and an filed an addendum to it on June 2, 1993.

On June 25, 1993, Richard I. Johnson, Sr. filed an omnibus motion seeking the dismissal of Counts II and III and a portion of Count I of the Indictment on the grounds that certain EPA regulations known as the "mixture" and "derived-from" rules had been invalidated and that the Indictment, insofar as it alleged the unlawful treatment and/or disposal of "hazardous wastes," relied on those rules. Additionally, Johnson argued that the distillation process referred to in Count III was not subject to RCRA regula-

tion. Johnson also sought the deletion of surplusage in the Indictment, a further bill of particulars, a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), regarding the veracity of the affidavit upon which a search warrant was issued, the suppression of evidence seized pursuant to the execution of three search warrants based on the alleged overbreadth of the seizure authorization, a hearing regarding the review by the United States Attorney's Office of seized legal files, severance of Counts I through XV from Counts XVI through XXI, disclosure of evidence which the Government intends to offer pursuant to Fed.R.Evid. 404(b), and disclosure of *Brady* and Jencks Act material. On June 28, 1993, Rosinski filed a motion seeking the dismissal of Count I of the Indictment, a bill of particulars, pretrial discovery, and suppression of evidence. In a letter dated July 2, 1993, counsel for Richard I. Johnson, Jr. joined in all the motions of his codefendants.

On August 17, 1993, the Government filed its Response to the Omnibus Motions of the Johnsons and Rosinski. The Government opposed the motions to dismiss, to strike surplusage, and to suppress. The Government provided some further particularization, but opposed most requests. The Government agreed to the defense request for a hearing regarding the alleged unauthorized inspection of legal files by the United States Attorney's Office, agreed to a severance of the "bankruptcy" counts (Counts XVI—XXI) from the "hazardous waste" counts (Counts I—XV) of the Indictment, reiterated its previous position that it did not intend to introduce Rule 404(b) evidence, and acknowledged its responsibilities under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and the Jencks Act.

On November 15, 1993, Richard I. Johnson, Sr. submitted a Reply Memorandum and a Reply Affirmation of his attorney. In it, he argued that Counts II and III and parts of Count I are facially insufficient, in reliance on the Report and Recommendation of Magistrate Judge Robert P. Murrian in *United States v. Recticel Foam Corporation, et al.,* 858 F.Supp. 726 (E.D.Tenn.1993). Oral argument was heard before the undersigned on November 18, 1993, at which time the court scheduled the filing of any additional papers. On November 30, 1993, the Government filed a Statement as to Allegation of Hazardous Waste in the Indictment. In it, the Government outlined the anticipated proof as to the hazardous wastes in the challenged counts, acknowledged the invalidation of the "mixture" and "derived-from" rules, and stated that neither rule was used in the charge to the Grand Jury nor would be requested to be included in a charge to the jury at trial. *See* Government's Statement, filed November 30, 1993, at 10.

On December 29, 1993, Richard I. Johnson, Sr. filed a motion and Memorandum of Law seeking the dismissal of Counts I through III of the Indictment, inspection of the Grand Jury instructions, and postponement of the determination of all pending dismissal motions until objections to the Report and Recommendation in the *Recticel Foam* case are decided at the district court level. On February 2, 1994, the Government filed a Memorandum in Response to the motion, opposing the relief sought, and two affidavits of Assistant United States Attorney Littlefield. In the first affidavit, AUSA Littlefield stated that neither the "mixture" nor the "derived-from" rules were presented to the Grand Jury as a legal basis for the Indictment. In the second affidavit, AUSA Littlefield stated that he had been in contact with the attorneys handling the *Recticel Foam* case, and the appeal of the Report and Recommendation had been suspended, leaving "no reasonable basis to believe that there will be any resolution of the Tennessee case in the near future...." *See* Affidavit of AUSA Littlefield, filed February 2, 1994, at 2.

Richard I. Johnson, Sr. filed a Reply Memorandum on February 17, 1994. On May 13, 1994, he filed a Notice of Supplemental Authority, drawing the court's attention to a recent decision by the Environmental Appeals Board ("EAB") of the EPA, *In re Hardin County,* 1994 WL 157572 (E.P.A.). The Government filed its response to this submission on June 8, 1994.

For the reasons that follow, the Defendants' motion to dismiss Counts II and III,

and part of Count I should be DENIED, and the motion to suppress should be DENIED.

## DISCUSSION

### 1. The Motion to Hold the Motion to Dismiss in Abeyance.

As a preliminary matter, the motion of Richard I. Johnson, Sr., made December 29, 1993, to postpone the determination of all pending dismissal motions until such time as the Government's objections to the Report and Recommendation in the *Recticel Foam* case are resolved by the district court, is DENIED. Based on the averments of Assistant United States Attorney Littlefield, that proceedings in the *Recticel Foam* matter have been suspended "pending possible further proceedings before the Magistrate/Judge" and that "[t]here is no reasonable basis to believe that there will be any resolution of the Tennessee case in the near future ..." (*see* Affidavit of AUSA Littlefield, filed February 2, 1994, at 2), the court finds no reason to postpone the determination of the pending dismissal motions in this case.[2]

### 2. Introduction.

To assist the district court in understanding the discussion that follows, the following background information, by way of an introduction, is set forth: (1) the relevant provisions of RCRA, in particular the "mixture" and "derived-from" rules, which form the basis of the Defendants' motion to dismiss, (2) a brief history of the challenged rules, as it relates to the Defendants' motion, and (3) an examination of the arguments of the parties and resolution of the motions.

### (a) The relevant provisions of RCRA.

In the relevant portions of Count I, the Defendants are charged with conspiracy to violate 42 U.S.C. § 6928(d)(2). Section 6928(d)(2) prohibits the knowing treatment, storage or disposal, without a permit or in knowing violation of any material condition or requirement of such permit, of "any hazardous waste **identified or listed** under

[§§ 6921 et seq.] ..." (emphasis added). In Counts II and III of the Indictment, the Defendants are charged with violating 42 U.S.C. § 6928(d)(2)(A) in that they illegally disposed of hazardous wastes.

Title 42 U.S.C. § 6921(a) directs the Administrator of the EPA to "develop and promulgate criteria for identifying the characteristics of hazardous waste, and for listing hazardous wastes, ... taking into account toxicity, persistence, and degradability in nature, potential for accumulation in tissue, and other related factors such as flammability, corrosiveness, and other hazardous characteristics." *See* 42 U.S.C. § 6921(b). Title 42 U.S.C. § 6903(5) defines "hazardous waste" as:

a solid waste, which because of its quantity, concentration, or physical, chemical or infectious characteristics may—

(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

### (b) The Relevant Regulations.

Under the RCRA regulations, "solid waste" is defined as a discarded material not otherwise excluded by the regulations. *See* 40 C.F.R. § 261.2(a)(1). A discarded material is further defined as any material that is either abandoned, recycled or considered "inherently waste-like." 40 C.F.R. § 261.2(a)(2)(i)–(iii). A substance is "abandoned" if it is disposed of, burned or incinerated, or accumulated, stored or treated before or in lieu of disposal, burning or incineration. 40 C.F.R. § 261.2(b)(1)–(3). Substances are "recycled" if they are spent materials, sludges, byproducts or scrap metals and are applied to or on the land in a manner constituting disposal, or used to produce other products. 40 C.F.R. § 261.2(c)(1)(i)(A),

---

**2.** Prior to the issuance of this Report and Recommendation, the Government advised the court that the Defendant in the *Recticel Foam* matter

had entered a plea of guilty and that no action by the district court on the Report and Recommendation was contemplated.

(B). Materials are also recycled if they are burned to recover energy or produce fuel, if they are reclaimed, or if they are accumulated speculatively. 40 C.F.R. § 261.2(c)(2)–(4). Materials are "inherently waste-like" if they are F-listed wastes, fed to a halogen acid furnace, ordinarily burned, disposed of or incinerated, contain toxic constituents, or are substances hazardous to human health or the environment. 40 C.F.R. § 261.2(d)(1)–(3).

Title 40 C.F.R. § 261.3(a) defines "hazardous waste" as solid waste that meets any of the following criteria: (1) it exhibits any of the characteristics of a hazardous waste as identified in 40 C.F.R. subpart C; (2) it is a "listed" waste under 40 C.F.R. subpart D; or (3) it is a mixture of a solid waste and one or more hazardous wastes.[3] Section 261.3(b) provides that a solid waste becomes a hazardous waste in one of the following ways: (1) when the substance meets the listing requirements of subpart D; (2) in the case of a mixture, when a listed waste is added to another solid waste; or (3) in the case of any other hazardous waste, "when the waste exhibits any of the characteristics identified in subpart C." Section 261.3(c) provides that (1) "[a] hazardous waste will remain a hazardous waste" and (2) solid wastes derived from the treatment, storage or disposal of a hazardous waste are also hazardous wastes.[4]

Certain hazardous wastes are "listed" in the regulations under 40 C.F.R. subpart D. "F" wastes, listed in 40 C.F.R. § 261.31, are "hazardous wastes from non-specific sources," and include spent solvents, the wastes involved in the Defendants' activities as alleged in the Indictment. Hazardous wastes are also "identified" under subpart C, as exhibiting any of the following characteristics: ignitability, corrosivity, reactivity, or

toxicity. *See* 40 C.F.R. §§ 261.20–261.24. Additionally, the regulations provide that:

> [t]he definition of solid waste in this part applies only to wastes that also are hazardous for purposes of the regulations implementing subtitle C of RCRA. For example, it does not apply to materials (such as non-hazardous scrap, paper, textiles, or rubber) that are not otherwise hazardous wastes and that are recycled.

40 C.F.R. § 261.1(b)(1).

The regulation cited by the Defendants, in support of their position that substances destined for recycling are not solid wastes and thus excluded from RCRA regulation, creates an exclusion from RCRA regulation for "[s]econdary materials that are reclaimed and returned to the original process or processes *in which they were generated* where they are reused in the production process...." 40 C.F.R. § 261.4(a)(8) (emphasis added).

### (c) The "Mixture" and "Derived-from" Rules.

The so-called "mixture" and "derived-from" rules, which are the subject of this motion to dismiss, are, as noted, found in the above-cited regulations. Both rules were invalidated in *Shell Oil Co. v. Environmental Protection Agency*, 950 F.2d 741, 747–753 (D.C.Cir.1991), which held that the EPA failed to comply with the notice and comment requirements of the Administrative Procedure Act ("APA").[5] Subsequently, on June 4, 1992, in *United States v. Goodner Bros. Aircraft*, 966 F.2d 380 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993), the Eighth Circuit gave the invalidation retroactive effect.[6]

---

3. This is the so-called "mixture" rule.

4. This is the so-called "derived-from" rule.

5. Following the *Shell Oil* decision, the EPA requested a clarification that the D.C. Circuit's decision was to be applied only prospectively, a request which was summarily denied without opinion by order dated March 5, 1992. *See United States v. Goodner Bros. Aircraft, Inc.*, 966 F.2d 380, 384 n. 9 (8th Cir.1992); *In re Hardin County, OH*, 1994 WL 157572, *7 (E.P.A.). At the invitation of the D.C.Circuit, the EPA repro-

mulgated the "mixture" and "derived-from" rules, in somewhat different form, in 1992.

6. Given the provisions of 42 U.S.C. § 6976(a)(1), that a petition for review of an action of the Administrator in promulgating any regulation "may be filed only in the United States Court of Appeals for the District of Columbia ...," and "shall not be subject to judicial review in civil or criminal proceedings for enforcement ...," the jurisdiction of the court in *Goodner Brothers* is questioned as to the binding effect in this circuit of its retroactive application of the invalidation of the "mixture" and "derived-from" regulations.

### 3. The Defendants' Arguments in Support of Dismissal.

Turning to the arguments in support of the dismissal motion, the Defendants seek dismissal of Counts II and III and part of Count I of the Indictment because, they contend, the Government has failed to identify the basis upon which it is claimed that the substances at issue qualify as "hazardous waste" listed or identified by regulation under RCRA. As the Defendants assume that the Grand Jury relied upon the "mixture" and/or "derived-from" rules in alleging in the Indictment that the substances at issue are "hazardous wastes" within the meaning of RCRA, they argue that, positing a retroactive invalidation of the rules, the conduct alleged in Counts I, II and III of the Indictment cannot be found to be criminal within the meaning of RCRA.[7] See Memorandum of Defendant Richard I. Johnson, Sr., filed June 25, 1993, at 8–9. Additionally, the Defendants maintain that the Brighton still operation involved the reclamation of "pure" solvents from contaminated solvents, and was therefore exempt from RCRA regulation. Finally, the Defendants assert that the portion of Count I, which details the alleged dumping of drums of "hazardous waste," should be dismissed as the Government has failed to identify the basis upon which it is alleged that the substances in these drums may be considered hazardous waste subject to regulation under RCRA.

As alternative bases for dismissal, Rosinski argues that the Indictment charges several conspiracies in a single count and is therefore duplicitous and prejudicial. He also argues that Count I fails to state an offense in that the Government relies upon the theory that the Defendants conspired to defraud the United States by impairing the lawful functions of the EPA. Rosinski contends that such intangible interests are not the proper subject of such an offense. See Motion of Defendant Rosinski, filed June 29, 1993, at 1.

### 4. The Government's Response in Opposition.

In response, the Government argues that the defense motions are premature and that the Indictment is facially sufficient under Fed.R.Crim.P. 7. The Government contends that it is not required to identify the theory upon which it alleges that the substances at issue are hazardous wastes, and that its theory of liability, i.e., the specific basis upon which the identified substances are alleged to have been "hazardous" for purposes of RCRA, is not an element of the offense. Alternatively, the Government contends that the allegations regarding "hazardous wastes" in Counts I, II, and III do not rely on the invalidated "mixture" and "derived-from" rules. While the Government recognizes that the "mixture" and "derived-from" rules were held invalid as not having been properly promulgated, it contends that their invalidity has no impact on the general statutory mandate of RCRA proscribing the unauthorized disposal of listed hazardous wastes. See Government's Response, filed August 17, 1993, at 19–29.

### 5. Analysis of Dismissal Motion.

 An indictment is facially valid and sufficient if it contains the elements of the offense charged, fairly informs a defendant of

The determination of the retroactive effect of judicial review in invalidating a regulation is within the jurisdiction of the D.C.Circuit. See, e.g., Fertilizer Institute v. Environmental Protection Agency, 935 F.2d 1303, 1312 (D.C.Cir.1991). Although the denial of the Government's motion to clarify the retroactive effect of the Shell Oil ruling with respect to the "mixture" rule is subject to the interpretation that retroactive application was intended, nevertheless, as there are persuasive reasons for non-retroactivity, this issue, notwithstanding the holding in Goodner, may, absent a more definitive ruling by the D.C.Circuit, be an open one.

**7.** In Count II, the substance processed through the DCI still is described in the Indictment as a "solvent/water mixture" or a "contaminated mixture." Similarly, in Count III, the Government alleged that the Brighton still produced a foam that was vented onto the ground. This foam was described in the Indictment as a "hazardous waste mixture," a "contaminated mixture," and a "contaminated solvent mixture." The court does not, based upon Government's explicit and unequivocal representation that neither the "mixture" nor the "derived-from" rules were relied upon before the Grand Jury, find these statements to be references to the "mixture" rule, rather they appear in the Indictment as descriptive of the material involved.

the charges against which he must defend, and enables a defendant to plead an acquittal or a conviction in bar of further prosecution for the same offense. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). An indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state the time and place of the alleged offense in approximate terms. *See Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Covino,* 837 F.2d 65, 69 (2d Cir. 1988); *United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Ferrara,* 701 F.Supp. 39, 44 (E.D.N.Y.), *aff'd,* 868 F.2d 1268 (2d Cir.1988).

Where the statute, as an element of the criminal offense, requires that a defendant's conduct violate a regulation promulgated as part of the statute's regulatory scheme, a district court may consider whether the regulation "on its face" is within the terms of the statute. *See Adamo Wrecking Co. v. United States,* 434 U.S. 275, 285, 98 S.Ct. 566, 573, 54 L.Ed.2d 538 (1978) (regulation held not to constitute an emission standard under the Clean Air Act—indictment dismissed). If the court determines that the regulation is not of a kind contemplated by Congress, the indictment alleging its violation as an element of the offense may be dismissed. *Adamo, supra.*

From a review of the Indictment, it is apparent that Counts II and III, and the relevant portions of Count I track the language of RCRA and contain all the elements of the offenses. In Counts II and III, the Johnsons and Rosinski are accused of knowingly disposing of hazardous waste without the proper authorization. *See* 42 U.S.C. § 6928(d)(2)(A). The substances at issue are specifically described as hazardous wastes with reference to the prohibited conduct as alleged in the Indictment, and the approximate dates of the Defendants' acts are provided. In Count I, the Johnsons and Rosinski are accused of conspiring to violate § 6928(d)(2) in that they treated, stored and disposed of hazardous wastes without a per-

mit and/or in violation of an applicable interim status regulation or standard. Count I of the Indictment also alleges various overt acts, and specifies the conduct complained of and the approximate dates involved in this Count.

The Government's position is that the hazardous wastes, accepted for treatment by Envirotek, were designated as listed wastes by the generators, and the substances, which it is claimed the Defendants improperly disposed of, are likewise hazardous wastes, albeit in a diluted (DCI still) or different, *i.e.,* foam (Brighton still) form. The Government thus argues, and the court agrees, that the substances stated to be hazardous in the Indictment are properly alleged and may be found at trial to be listed hazardous wastes that, under the regulations concededly not affected by the decision in *Shell Oil,* remain hazardous until they are "delisted." *See* 40 C.F.R. § 261.3(c)(1) ("A hazardous waste will remain a hazardous waste.").

The Indictment alleges that listed hazardous wastes were distilled by the Defendants in two ways, first, by injecting steam onto the liquid spent solvents (the DCI still) and, second, by applying dry heat to them (the Brighton still). With regard to Count II, the Government points out that when Envirotek accepted spent solvents for treatment, they were designated as F-listed hazardous wastes by the generators. *See* Government Response, filed August 17, 1993, at 16. Envirotek then attempted to distill a pure solvent by injecting steam directly into the hazardous waste. The recaptured pure solvent would not be considered a hazardous waste under RCRA, but the distillation process, as undertaken by Envirotek, did nothing more than dilute the contaminated solvents, resulting in a liquid containing, as alleged, a scientifically significant amount of the spent solvents. The Government contends that the remaining waste was therefore a hazardous waste pursuant to 40 C.F.R. § 261.3(c)(1). The substance described in Count II of the Indictment accordingly may be found at trial to be a hazardous waste under both RCRA and the applicable regulations.

Further, as to Count III, the Government argues that the Indictment sufficiently alleg-

es the hazardous substance from the Brighton still was the same hazardous substance that existed before the distillation process. It is alleged that the Brighton still was operated improperly, resulting in the contaminated solvent to foam out of the venting system and onto the ground. *See* Indictment, at 16. As the spent solvent that went into the still is alleged to be a hazardous substance pursuant to RCRA prior to this process, the substance that allegedly came out, heated spent solvent in foam form, may likewise be found, after proof at trial, to be a hazardous waste; it may not be a mixture of or derived from anything. Again, the substance in Count III may properly be found, upon sufficient evidence at trial, presumably of a scientific or technical nature, to be a hazardous waste under both RCRA and its related regulations.

■ A review of the factual allegations of the Indictment supports the conclusion that the substances at issue are sufficiently alleged to be "hazardous" within the meaning of RCRA. Section 6928(d) of RCRA criminalizes any mishandling of a solid waste that has been listed or identified as a hazardous waste by the Administrator of the EPA. In the Indictment, it was alleged that Envirotek received "spent solvents." Under the applicable regulations, "spent solvents" are F-listed wastes. *See* 40 C.F.R. § 261.31; *see also* Government Response, filed August 17, 1993, at 16. At trial, it will be the Government's burden to establish that the wastes alleged in the Indictment are within the statutory definitional scheme. While the Defendants insist Counts I, II and III of the Indictment are defective as based on an invalid regulation, the Government has maintained such reliance did not take place. The Government's position is consistent with the statute, which permits criminal prosecution only for the unlawful treatment, storage and disposal of hazardous wastes that are "identified or listed" under RCRA. *See* 42 U.S.C. § 6928(d)(2). To the extent that the Defendants challenge the sufficiency of the anticipated evidence against them, specifically the factual bases upon which the Government intends to prove that the substances at issue are indeed "hazardous" within the meaning of RCRA and applicable regulations, that argument must be directed to the trial court after the close of the Government's affirmative case, and is therefore premature. *See United States v. Self,* 2 F.3d 1071, 1082 (10th Cir.1993) (whether substance was hazardous pursuant to RCRA was dependent on factual issues, and not appropriate for disposition on pretrial motion to dismiss). As noted, the Government has represented that these invalidated rules were not referred to in the Grand Jury. On its face, the Indictment properly asserts violations of § 6928(d). Moreover, the court may not look beyond a facially valid indictment to determine if the evidence upon which it was based is sufficient. *See Bank of Nova Scotia v. United States,* 487 U.S. 250, 261, 108 S.Ct. 2369, 2377, 101 L.Ed.2d 228 (1988).

■ Even if it should appear that the "mixture" or "derived-from" rules had in some way been referred to before the Grand Jury, such reference would not have been prejudicial, as the rules have no application to the facts as alleged in the Indictment. As to the distillation process described in Count II, it does not appear that ordinary water is a "solid waste" under the definitions in the RCRA regulations, rendering the "mixture" rule irrelevant to this case. The "mixture" rule defines as a hazardous waste any "mixture of a solid waste and a hazardous waste." *See* 40 C.F.R. § 261.3(a)(2)(iv). Additionally, the definition of "solid waste" in the regulations "applies only to wastes that are also hazardous for purposes of the regulations implementing Subtitle C of RCRA," that part of the statute that deals with hazardous waste management, §§ 6921–6934. *See* 40 C.F.R. § 261.1(b)(1). Water is not a substance that is regulated as a hazardous waste under RCRA. Additionally, water would not be considered a hazardous waste under the regulations implementing subtitle C, as it is neither a listed nor characteristic waste, displaying the properties of ignitability, corrosivity, reactivity or toxicity. *See* 40 C.F.R. §§ 261.21–24.

Even assuming that the definitions of solid waste applied to water, it does not appear that water satisfies the criteria set out in the regulations. Water is not considered inher-

ently waste-like, nor is it recycled or disposed of in a manner contemplated by the regulations. Additionally, the EPA has defined "solid waste" as "[n]on-liquid, non-soluble materials ranging from municipal garbage to industrial wastes that contain complex and sometimes hazardous substances.... Technically, solid waste also refers to liquids and gases in containers." 4 Treatise on Environmental Law (Bender 1994), Glossary–73. Water and air are contrasted with solid waste, as they "have natural cleansing or assimilative capacity and ... are generally capable of self-renewal." 1A Treatise on Environmental Law (Bender 1994), § 4.01[1]. There is no reason to think that either the steam or resulting evaporated water created during the distillation process in the DCI still is anything but water.

In sum, water is not a "solid waste" for purposes of the regulations implementing RCRA, since its definition does not encompass a non-hazardous substance like water, nor does it fall within the terms of the applicable regulations. Consequently, a "mixture" of a listed hazardous waste—spent solvents—and water is not a hazardous waste under the regulations' so-called "mixture" rule. Rather, the substance is a listed waste in an altered form, in this case, under Count II of the Indictment, diluted by the injection of steam.

The recent decision of the Environmental Appeals Board *In re Hardin County*, 1994 WL 157572 (E.P.A.), relied upon by the Defendants, does not contradict this conclusion. In the *Hardin County* matter, EPA attempted to enforce a civil administrative complaint under RCRA which alleged that the Hardin County, Ohio Waste Water Treatment plant had received and processed certain wastewater treatment sludge containing certain listed hazardous wastes. Unlike the instant criminal case, the complaint expressly relied upon the "mixture" rule. To the extent that the decision reconfirms the conclusion in *Recticel*, that the "mixture" rule may not form the basis of enforcement actions under EPA, the *Hardin County* decision adds little to the resolution of the issue at bar. Further, in the *Hardin County* matter, unlike the substances alleged in the Indictment, as the

compounds in the sludge were non-separable and, therefore, as evidently agreed by the parties in that case, *see Hardin County, supra*, at *2, could only be considered hazardous waste under the "mixture" rule, the case is inapposite.

With regard to the Defendants' argument that the operation of the Brighton still was outside the RCRA regulations, the Government notes that the reclamation exception cited by the Defendants, *see* Memorandum of Richard I. Johnson, Sr., filed June 25, 1993, at 9–10, applies to generators of hazardous wastes, not treatment, storage and disposal facilities. Count III alleges that Envirotek was in the business of reclaiming pure solvents from spent solvents discarded by industrial generators and the the solvents escaped from the Brighton still during the reclamation process. The Government contends that the spent solvents introduced into the still and improperly discharged through the vent are within the definition of solid waste. Spent solvents, such as those at issue in Count III, when discarded by the generator to a reclamation facility are solid wastes subject to RCRA regulation.

Finally, with respect to those portions of Count I at issue, the allegations that the Johnsons and Rosinski improperly disposed or caused to be disposed of the contents of drums of hazardous waste, a fair reading of Count I indicates that the drums of wastes, acquired by Envirotek in the course of its business as a treatment and storage facility for hazardous wastes, would indeed constitute hazardous waste under RCRA. *See Hamling v. United States, supra.* It will be the Government's burden to establish, in fact, that the drums contained a substance that was hazardous, as defined under RCRA, and that the Defendants knew that the drums contained a substance that posed a potential threat to others or the environment. *See United States v. Laughlin*, 10 F.3d 961, 966 (2d Cir.1993). *cert. denied,* — U.S. —, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994). In its bill of particulars, dated April 2, 1992, the Government specified that the wastes in question were "mostly solvent wastes" thereby constituting "F" or "D" listed wastes under 40 C.F.R., Pt. 261.

**6. Authorities Relied on by Defendants.**

The court has reviewed the authorities in the Memorandum of Law of Richard I. Johnson, Sr., filed December 29, 1993, and finds that they support the conclusion that the Indictment, in this case, is sufficient, and that specific reference to regulatory definitions of hazardous waste is not required in the Indictment. The cited cases are directed to the sufficiency of the proof after trial, specifically the defendants' knowledge of the hazardous nature of the substances involved, and the charge to the jury. *See United States v. Goldsmith,* 978 F.2d 643, 646 (11th Cir.1992) (quoting *United States v. Dee,* 912 F.2d 741, 745 (4th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991)) ("a defendant need not know the exact identity of the chemicals disposed of, but only that the chemicals have 'the potential to be harmful to others or to the environment'"); *United States v. Goodner Bros. Aircraft, Inc.* 966 F.2d 380 (8th Cir.1992) (jury instructed on listed wastes and the invalid "mixture" rule; case remanded), *cert. denied,* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993); *United States v. Baytank (Houston), Inc.,* 934 F.2d 599, 613 (5th Cir.1991) (statute requires that defendant know factually what he is doing, not "that he know that there is a regulation which says what he is storing is hazardous under the RCRA"); *United States v. Sellers,* 926 F.2d 410, 415 (5th Cir.1991) (government need not prove that defendant knew that the waste was hazardous within the meaning of the regulations, only that the defendant knew what the waste was, *i.e.,* "paint," "solvent," etc.); *United States v. Hoflin,* 880 F.2d 1033, 1039 (9th Cir.1989) (jury required to find that defendant "disposed of chemical waste which he knew 'had the potential to be harmful to others or to the environment'"), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990); *United States v. Greer,* 850 F.2d 1447, 1452 (evidence sufficient to show that defendant knew that dumping a load of 1,1,1 trichloroethane "would pose harm to others or the environment").

In *United States v. Laughlin,* 768 F.Supp. 957 (N.D.N.Y.1991), the Government contended that a violation of § 6928(d)(2)(A) would be proved by establishing the following four elements: (1) that the defendant knowingly stored or disposed of a substance during the time period alleged in the indictment; (2) that pursuant to RCRA, the substance was hazardous; (3) that the defendants knew that the substance had the potential to be harmful to others or the environment, "or in other words, it was not an innocuous substance like water;" and (4) that the defendants had not obtained a permit or interim status authorizing the storage or disposal of hazardous waste under RCRA. *See Laughlin, supra,* at 959. *Laughlin* supports the Government's position in the instant case that specificity, regarding the basis upon which the substances are alleged to be "hazardous," is not required at the pleading stage in a RCRA prosecution. Rather, after the close of proof, the jury must be instructed in its determination whether the substances at issue are hazardous pursuant to RCRA. The Second Circuit, in affirming the convictions in *Laughlin,* stated that to find a violation of § 6928(d)(2)(A), it need only be shown that the defendant knew that the substance improperly treated, stored, or disposed of had the potential to be harmful to others or to the environment. *See United States v. Laughlin,* 10 F.3d 961, 966 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994). The defendant's "knowledge of regulatory requirements is not necessary," and the district court "did not err in declining to charge that the statute required knowledge that the creosote sludge was 'identified or listed' under RCRA." *Laughlin, supra,* at 965.

The Defendants rely on the *Goodner Brothers* decision, *supra,* in support of their argument that the Indictment is facially defective. In *Goodner Brothers,* the jury was instructed to determine whether the substances at issue were "hazardous" within the meaning of RCRA. Specifically, the jury was instructed that certain wastes were "listed" by the EPA as hazardous, and further that mixtures of hazardous and non-hazardous wastes result in a hazardous waste (the "mixture" rule). *See Goodner Brothers, supra,* at 383–384. From the jury's general verdict in the case, the court could not determine whether the jury found that the sub-

stances were "listed" hazardous wastes or whether it relied upon the "mixture" rule. The Eighth Circuit, giving retroactive application to the invalidation of the "mixture" rule, remanded the case for a new trial on the challenged counts of the indictment.

Having reviewed the *Goodner Brothers* case, the court finds that it does not compel the result sought by the Defendants, but implicitly supports the Government's position that the Defendants' challenge to the Indictment is premature. *Goodner Brothers* did not involve a pretrial challenge to the legality of an indictment, but was a post-trial challenge to the sufficiency of the evidence. If the court in *Goodner* believed that any reliance upon the "mixture" or "derived-from" rules would necessarily invalidate a RCRA indictment, it would not have remanded for re-trial, but rather would have dismissed the indictment.

The Defendants also rely on a Report and Recommendation of United States Magistrate Judge Robert P. Murrian in the case *United States v. Recticel Foam Corporation et al.*, 858 F.Supp. 726 (E.D.Tenn.1993). In *Recticel Foam*, the magistrate judge recommended the dismissal of Counts I through XII of the indictment on the ground that the materials at issue did not constitute a hazardous waste within the meaning of RCRA. The defendant was indicted for RCRA violations based upon its action in generating quantities of spent solvents, which were mixed with two other solid waste streams after use in the production of flexible polyurethane and rigid urethane foam. It was stipulated that only one of the processing streams contained spent solvents, a listed hazardous waste. The question was whether the collection of those post-manufacturing use fluids into a single container, including the spent solvents in one of the streams, created a regulated hazardous waste, as a basis for criminal liability under RCRA.

The magistrate judge in *Recticel* noted that under 40 C.F.R. § 261.31, adopted in 1985 and which were not the subject of litigation in the *Shell Oil* case, only pre-use mixtures of solvents were classified as hazardous wastes, and that such mixtures of solid wastes were only considered hazardous un-

der the "mixture" rule. *See Recticel, supra* at 730–731. Based, however, on the invalidation of the "mixture" rule in *Shell Oil, supra*, the judge found that, as a post-manufacturing use mixture, the resulting waste which was the subject of the indictment "did not constitute 'hazardous waste' under the properly promulgated EPA regulations applicable during the time encompassed by [the] indictment," *see Recticel Foam, supra*, at 746, and therefore could only have been found to be a hazardous waste under the invalid mixture rule. The court further found as a matter of law, upon the stipulated facts, "the conduct [as stipulated] simply did not violate the properly promulgated and enforceable federal law as it existed.…" *Recticel Foam, supra*, at 746.

It should be noted that *Recticel* involved the unusual procedure of a submitted stipulation of facts to the court as a basis for a pretrial motion to dismiss an indictment. This, in itself, makes the case fact-specific and distinguishable from the instant motions, which attack the validity of the Indictment on its face. Moreover, absent adoption by a district judge, the precedential value of a report and recommendation is uncertain. However, based on the stipulation, *Recticel's* facts are also materially different from the case at bar. Here, the Indictment alleges in Count II that as to the DCI still, water was injected into the spent solvents which, after distillation, produced a liquid containing the spent solvents. In Count III, the nature of the spent solvents was changed by the application of dry heat. Defendants do not disagree that spent solvents are F-listed hazardous wastes. In both instances, the Defendants are alleged to have permitted these substances to escape into the ground. Comparing the allegations of the Indictment with the facts as stipulated in *Recticel*, there does not appear to have been any creation of a post-use mixture of a solid waste at Defendants' Envirotek operation necessitating reference to the invalidated "mixture" rule in order to find that the solid waste, *i.e.*, the spent solvent, is a listed hazardous waste.

The importance of this distinction is further demonstrated by the reference in the *Recticel* Recommendation to *United States v.*

*Bethlehem Steel,* 829 F.Supp. 1023 (N.D.Ind. 1993) in which the court sustained an indictment under RCRA against the argument that the invalidated "mixture" rule was needed to support it. *See Recticel Report and Recommendation,* at 735. In the *Bethlehem Steel* case, the court found that the waste in question was a listed waste and relied upon 40 C.F.R. § 261.3(c)(1), the EPA's continuing jurisdiction rule, also unaffected by the *Shell Oil* decision, which provides that a hazardous waste will remain a hazardous waste unless it is de-listed and that a "hazardous waste does not lose its hazardous character simply because it changes form or is combined with other substances." *United States v. Bethlehem Steel, supra,* at 1032 (quoting *Chemical Waste Management, Inc. v. Environmental Protection Agency,* 869 F.2d 1526, 1539 (D.C.Cir.1989)). In the instant case, even without the benefit of the evidence at trial or a pre-trial stipulation, the allegations of the Indictment appear to contemplate proof that the listed solvents in question were either merely combined with distilled water or changed in form prior to being improperly released into the environment.

Additionally, the defendant in *Recticel* was a generator of hazardous waste, and the issue there was whether a substance that it produced was "hazardous" within the meaning of RCRA. Here, Envirotek was not a generator of hazardous waste, but was a storage and treatment operation for wastes that were allegedly identified by the generators as "hazardous" within the meaning of RCRA. Thus, in this case, the substances at issue had, according to the Indictment, been identified as falling within the RCRA regulatory scheme. Here, the Defendants did not mix the spent solvents with other hazardous or non-hazardous wastes; rather they attempted to dispose of them without the proper authorization.

Counts I, II and III of the Indictment allege that Defendants violated RCRA by mishandling certain hazardous wastes. There is no claim that 40 C.F.R. § 261.31, which specifies listed hazardous wastes, is invalid. Nor can it be held, at this stage, as a matter of law, that the Government cannot prove the spent solvents, which Defendants

processed in the Envirotek stills, were hazardous wastes. Whether the wastes which Defendants allowed to escape into the environment were spent solvents under 40 C.F.R. § 261.31, whether such spent solvents are listed as hazardous wastes by a valid EPA regulation, and whether such wastes are hazardous under RCRA are facts which the Government will have the burden of establishing at trial. Therefore, Counts I, II and III of the Indictment are facially sufficient, and any challenge to the sufficiency of the Government's evidence that the wastes handled by Defendants were in fact hazardous is more appropriately addressed to the trial court after the close of the Government's proof.

**7. Dismissal Motion based on Duplicitousness.**

■ Turning to the arguments of Defendant Rosinski, a review of the Indictment indicates that Count I alleges a single conspiracy and is, therefore, not duplicitous. "An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992) (citing *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980)). However, "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses." *United States v. Sugar,* 606 F.Supp. 1134, 1146 (S.D.N.Y.1985). The issue is whether the "policy considerations underlying the doctrine" are offended. *See Sugar, supra.* Those considerations include

avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.

*United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981) (citing *Murray, supra,* at 896).

Upon a review of Count I of the Indictment, the court finds that none of these policy concerns is implicated, nor does Rosin-

ski so argue. Moreover, it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the crime charged is the single offense of conspiracy, however diverse its objects. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942); *United States v. Margiotta, supra; United States v. Murray, supra.* Additionally, the court has reviewed Count I of the Indictment and finds it facially sufficient. Title 18 U.S.C. § 371 prohibits a conspiracy to "defraud the United States, or any agency thereof in any manner or for any purpose...." The court finds that paragraph (3) of the conspiracy count tracks the statutory language and adequately alleges a violation thereof. *See Hamling, supra; see also United States v. Klein,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958) (conspiracy to defraud the United States by impeding the lawful functions of the Department of the Treasury).

Accordingly, the Defendants' motion to dismiss Counts II and III, and portions of Count I, should be DENIED.

### 8. Motion to Suppress.

The Defendants claim that the search warrants, which authorized the seizure of business records of the four corporations controlled by the Johnsons were impermissibly overbroad. They seek suppression of the seized documents, or a hearing "to determine whether or not the breadth of the warrant's seizure authorization, and the corresponding acquisition of virtually all documents of four different businesses, is sustainable under the good faith exception" of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See* Memorandum of Richard I. Johnson, Sr., filed June 25, 1993, at 38; *see also United States v. Roberts,* 852 F.2d 671 (2d Cir.), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 583 (1988). The Government contends that the seizure authorization was not overbroad because the businesses searched were "permeated with fraud." It is argued that, under such circumstances, the seizure of all business records of the companies controlled by the Defendants

is authorized. *See National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir.1980) (citing *United States v. Brien,* 617 F.2d 299, 309 (1st Cir.), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980)).

The Fourth Amendment requires that warrants "particularly describ[e] ... the person or things to be seized." The particularity requirement renders "general searches ... impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). In reviewing a warrant against a claimed lack of particularity, "the language of a warrant is to be construed in light of an illustrative list of seizable items." *United States v. Riley,* 906 F.2d 841, 844 (2d Cir.1990); *see also United States v. Young,* 745 F.2d 733, 759–60 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). While the purpose of the particularity requirement is to avoid leaving to "the unguided discretion of the officers executing the warrant the decision as to what items may be seized," (*United States v. Riley, supra,* citing *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) and *Marron v. United States, supra*), the particularity requirement is not so exacting as to eliminate all discretion of the executing officers. *United States v. Riley, supra.* "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment...." *United States v. Riley, supra,* at 845.

Here, the Government sought the seizure of waste product records, records of manifested wastes, work orders and invoices, drum tally sheets, waste receiving reports, waste evaluation logs, drum tally-drum storage logs, waste-tracking reports and logs, certificates of destruction of hazardous waste, records of product reclamation, laboratory log books, laboratory works sheets and reports, business, personnel and/or financial records of Envirotek, Ltd., Alpha Svenska, Ltd., and Luxall, Ltd., and incorpo-

ration certificates and minutes of meetings for the above three corporations and Arrowhead Environmental. Additionally, any and all books and records of the four corporations for the period 1982 to the present, including ledgers, journals, receipts, balance sheets, deeds, mortgages, contracts, invoices, bills, bank statements, financial statements, tax returns, stocks bonds and treasury notes were sought. *See* Search Warrants, Memorandum of Richard I. Johnson, Sr., filed June 25, 1993, Exhibits Q, R, and S.

Having reviewed the warrants at issue, the court determines that, although the search warrants at issue were broad, they were not unconstitutionally overbroad, as the businesses involved were shown to be sufficiently permeated with fraud to justify the wide scope of the warrant. It was alleged, in the affidavit in support of the warrant, that Defendants' four businesses were all located in offices located at 849 Delaware Avenue in the City of Buffalo and were intertwined for the purpose of promoting the Envirotek Ltd. operations. Luxall Ltd. provided sales, marketing and advertising services for Envirotek, Alpha Svenska Ltd. was used by Envirotek to register the motor vehicles which transported hazardous wastes, and Arrowhead Environmental acted as a marketing agent for Envirotek. *See* Cain Affidavit, Exhibit A to Government's Response, filed August 17, 1993, at paras. 25—28. All four companies, it is alleged, were used to further the scheme to defraud by which the Defendants attempted to evade compliance with state and EPA regulations by falsifying documents and improperly disposing of hazardous wastes in violation of permits which had been issued to these companies.

Although a mere allegation of fraud is not enough to authorize the seizure of all business records, *see Roberts v. United States,* 656 F.Supp. 929, 936 (S.D.N.Y.1987) (government did not establish that every aspect of the enterprise was permeated with fraud), given the closely-connected nature of the Defendants' businesses here, it would not have been possible "through a more particular description to segregate those business records that would be evidence of fraud from those that would not...." *United States v. Offices*

*Known as 50 State Distributing Co.,* 708 F.2d 1371, 1374 (9th Cir.), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). An affidavit in support of a search warrant need not set forth specific factual evidence demonstrating that every part of the enterprise was engaged in fraud, only sufficient factual evidence of fraudulent activity from which the issuing magistrate could infer that those activities are "just the tip of the iceberg." *United States v. Burke,* 718 F.Supp. 1130, 1140 (quoting *Brien, supra,* at 308). That evidence could consist of proof of a "large number of fraudulent transactions," or proof that the fraudulent operations are "inseparable" from the other business operations. *See Burke, supra,* at 1140–41.

In *Matter of Search of 4801 Flyer Avenue v. Householder,* 879 F.2d 385 (8th Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990), the court examined a similarly broad search warrant executed on a company involved in the handling of hazardous wastes and accused of improper disposal of wastes and resulting contamination. Although the court disposed of the case on procedural grounds, it stated that the warrant was not overbroad because of the "pervasive pattern" of unlawful activity that permeated the entire business. *Matter of 4801 Flyer Avenue, supra,* at 389–390. Similarly, in *Matter of Search of 949 Erie Street, Racine, Wisc.,* 645 F.Supp. 55 (E.D.Wisc.1986), an environmental testing and consulting firm was allegedly engaged in the "pervasive falsification" of records submitted to regulating agencies. The court found that an exhaustive search warrant for the company's offices was not unconstitutionally overbroad, as the affidavit in support of the warrant established probable cause that the alleged criminal activity permeated the business.

■ Here, the businesses were the vehicle by which the Defendants are alleged to have perpetrated the fraud on the Government by obstructing the lawful functions of the EPA and its agents. It appears that the sole business of these related companies was waste transport, storage and disposal, and thus the allegations of illegal conduct permeate all aspects of the Defendants' businesses. As such, the warrant, authorizing a seizure of all business records and documents

relating to their business operations, was not unconstitutionally overbroad. Accordingly, the motion, to the extent that Defendants seek suppression of the seized evidence, should be DENIED. To the extent that Defendants have framed their request as one for a hearing to determine whether the seizure was sustainable on the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), such a hearing is unnecessary, and the request should likewise be DENIED.

### *CONCLUSION*

Based on the above analysis, the Defendants motions to dismiss Counts II and III, and portions of Count I, of the Indictment should be DENIED. The motion to suppress evidence seized pursuant to three search warrants, or for a hearing to determine whether the warrant is sustainable under the good faith exception, should also be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.